FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 2 5 2014 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

OSCAR ALBERTO and JOHN DOE (NEW : 
YORK)on behalf of themselves and others :
similarly situated, :

        Plaintiffs, :

    - against - ;

COLGATE-PALMOLIVE COMPANY, :
COLGATE-PALMOLIVE (AMERICA) INC,
and COLGATE-PALMOLIVE (NEW YORK)
INC,

        Defendants.

-------------------------------------------------------------x

**CV.14-5649**

Case No.

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

**AMON, CH.J.**

POLLAK, M.J.

      Plaintiffs, OSCAR ALBERTO and JOHN DOE (NEW YORK) (collectively, "Plaintiffs") on behalf themselves and all other persons similarly situated, by their undersigned attorneys, as and for their Complaint against the Defendants, allege the following based upon personal knowledge as to themselves and their own actions, and, as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

**NATURE OF THE ACTION**

      1.    This action seeks redress on a class-wide basis for a deceptive and otherwise improper business practice that Defendants, Colgate-Palmolive Company ("COLGATE-PALMOLIVE COMPANY"), Colgate-Palmolive (America), Inc. ("COLGATE-PALMOLIVE (AMERICA)"), Colgate-Palmolive (New York), Inc. ("COLGATE-PALMOLIVE (NEW YORK)"), Colgate-Palmolive Enterprises ("COLGATE-PALMOLIVE ENTERPRISES"), Colgate-Palmolive Global Trading Company ("COLGATE-PALMOLIVE GLOBAL"), Colgate-

Palmolive Holding, Inc. ("COLGATE-PALMOLIVE HOLDING"), and Colgate-Palmolive International LLC ("COLGATE-PALMOLIVE INTERNATIONAL") (collectively, the "Defendants"), engage in with respect to the packaging of their "Speed Stick® Power™" and "Speed Stick® Deodorant" anti-perspirants and deodorants. The Speed Stick® Power™ is a line of anti-perspirants and deodorants available in "Fresh," "Ultimate Sport" and "Unscented" scents; and the Speed Stick® Deodorant is a line of deodorants available in "Regular," "Ocean Surf," "Fresh" and "Musk" scents (collectively, the "Products"). The Products come in 3.0 ounce sticks and have non-functional slack-fill in violation of the federal Food Drug & Cosmetic Act ("FDCA") Section 403 (21 U.S.C. 343 (d)), Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, et. seq. and New York General Business Code ("NY GBL") § 349. The size of the container in comparison to the actual deodorant stick makes it appear to the reasonable consumer that they are buying more than what is actually being sold.

2.      The Products are sold in a container which is approximately 5 ¾" in height and approximately 2 ¾" wide. The actual size of the deodorant stick of the Product is approximately 2 ½" wide and 3 ½" long. Thus, the size of the container has at least 2 ¼" of slack-fill in height and is designed to give the false impression that there is more product than actually packaged.

3.      The price of the Products is $3.99 each.

4.      The size of the container in relation to the volume of the product contained therein gives the false impression that the consumer is buying more than they are actually receiving.

5.      Plaintiffs and Class members viewed Defendants' misleading Product packaging, reasonably relied in substantial part on the representations and were thereby deceived in deciding to purchase the Products for a premium price.

6.     Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale the Products.

7.     During the Class Period, Defendants manufactured, marketed and sold the Products throughout the United States. Defendants purposefully sold the Products with non-functional slack-fill.

8.     Defendants' actions constitute violations of the federal FDCA Section 403 (21 U.S.C. 343 (d)), Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, et. seq. and New York's Deceptive Acts or Practices NY GBL § 349, as well as those similar deceptive and unfair practices and/or consumer protection laws in other states.

9.     Defendants violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.  These statutes are:

    *a.*  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
    *b.*  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
    *c.*  Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
    *d.*  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
    *e.*  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
    *f.*  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
    *g.*  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
    *h.*  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
    i.   District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
    *j.*  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
    *k.*  Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
    *l.*  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
    *m.*  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
    *n.*  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
    *o.*  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
    *p.*  Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

    *q.*  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

    *r.*  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

    *s.*  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

    *t.*  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

    *u.*  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

    *v.*  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

    *w.*  Michigan Consumer Protection Act, § § 445.901, *et seq.;*

    *x.*  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

    *y.*  Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

    *z.*  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

    *aa.* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

    *bb.* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

    *cc.* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

    *dd.* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

    *ee.* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

    *ff.* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*

    *gg.* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

    *hh.* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

    *ii.*  North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

    *jj.*  Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

    *kk.* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

    *ll.*  Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

    *mm.*  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

    *nn.* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

    *oo.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

    *pp.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

    *qq.* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

    *rr.* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et sep.;*

    *ss.* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

    *tt.*  Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

    *uu.* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

    *vv.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

    *ww.* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

    *xx.* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

    *yy.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

10.    Defendants have deceived Plaintiffs and other consumers nationwide by mischaracterizing the volume of their Products. Defendants have been unjustly enriched as a

result of their conduct. Through these unfair and deceptive practices, Defendants have collected millions of dollars from the sale of their Products that they would not have otherwise earned.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

12.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because it arises under the laws of the United States.

13.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

14.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

15.     The Court has personal jurisdiction over Defendants because their Products are advertised, marketed, distributed and sold throughout the United States; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State.

16.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and Defendants are subject to personal jurisdiction in this District. Plaintiffs purchased and used Defendants' Products in Queens County.

### PARTIES

17.     Plaintiff, OSCAR ALBERTO is a citizen of the state of New York and resides in Queens County.

18.     Plaintiff, JOHN DOE, is a citizen of the state of New York.

19.     Defendant COLGATE-PALMOLIVE COMPANY is a Delaware corporation with headquarters at 300 Park Avenue, New York, New York 10022 and an address for service of process located at C/O C T Corporation System, 111 Eighth Avenue, New York, New York, 10011 that wholly owns Defendants COLGATE-PALMOLIVE (AMERICA) and COLGATE-PALMOLIVE (NEW YORK).

20.     Defendant COLGATE-PALMOLIVE (AMERICA) is a Delaware corporation with headquarters at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801.

21.     Defendant COLGATE-PALMOLIVE (NEW YORK) is a Delaware corporation with headquarters at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801.

22.     Defendant COLGATE-PALMOLIVE COMPANY owns the trademarks for "Speed Stick® Power™" and "Speed Stick® Deodorant" that appear on the Products.

## FACTUAL ALLEGATIONS

23.     Defendants manufacture, market, sell and distribute, *inter alia*, various consumer products under well-known household brand names such as Speed Stick®.

24.     Defendants sell their products at most supermarket chains, convenience stores and major retail outlets throughout the United States, including but not limited to Costco, Target, Wal-Mart, Walgreens, CVS and Rite Aid.

25.     Pursuant to C.F.R. 100.100:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;
(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

7

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

26.     Defendants have routinely employed slack filled packaging containing non-functional slack-fill to mislead consumers into believing that they were receiving more than they actually were.

27.     Defendants lacked any lawful justification for doing so.

28.     In the twelve month period prior to the filing of this lawsuit, Plaintiff OSCAR ALBERTO has purchased several of Defendants' deodorants including (i) a 3.0 ounce Speed Stick Power anti-perspirant and deodorant stick in Fresh, (ii) a 3.0 ounce Speed Stick Power anti-perspirant and deodorant stick in Ultimate Sport and (iii) a 3.0 ounce Speed Stick Power anti-perspirant and deodorant stick in Unscented for the purchase price of approximately $3.99 each.

29.     The container size and dimensions for the Speed Stick® Power™ and Speed Stick® Deodorant Products are exactly the same.   The containers for the Products are approximately 5 ¾" long and 2 ¾" wide and elliptically shaped.

30.     Pictures of the Products and packaging are shown below:





31.    As shown above, the actual deodorant stick inside the 3.0 ounce Product is only approximately 3 ½" tall and 2 ½" wide.  In making their purchases, Plaintiffs and members of the Class relied on the size of the container to believe that the entire volume of the packaging would be filled to capacity with product.

32.    The volume capacity of the container for both the 3.0 ounce sticks is approximately 12.419 cubic inches.

10

33.     The volume of each 3.0 ounce stick is only approximately 6.872 cubic inches leaving a difference of approximately 5.547 cubic inches or approximately 45% of slack fill.

34.     Non-functional "slack-fill is the difference between the actual capacity of a container and the **volume** of product contained within (21 C.F.R. 100.100) (emphasis added). Plaintiffs were (and a consumer would reasonably be) misled about the volume of the product contained within the container in comparison to the size of the Products' packaging. Plaintiffs paid the full price of the Products and only received approximately 55% of what Defendants represented they would be getting due to the approximate 45% non-functional slack-fill in the 3.0 ounce Products.  In order for Plaintiff and Class members to be made whole, they need to receive a refund of the purchase price of the Products equal to the percentage of non-functional slack-fill in the Products.

35.     The propel/repel mechanism utilized in the containers that pushes up the deodorant stick does not require so much space to function.  For example, a fully functioning travel size deodorant container using a similar standard propel/repel mechanism is only 3 inches tall in its entirety with the propelling mechanism taking up only ⅜ of an inch.

36.     Further, a brand new Product can be repelled to show that in its starting position, it has already been propelled midway to bring the deodorant up to the top of the body of the container.  There is no doubt that there is no practical business purpose for the non-functional slack-fill used to package the Products other than to mislead consumers as to the actual volume of usable deodorant in the Products.

37.     Defendants' Products are also uniquely deceptive because consumers never actually see the amount of deodorant product they are using until the Product is used up,

whereupon Plaintiffs and reasonable consumers will assume they used up all 5 ¾" of deodorant bought when in fact, they only use up 3 ½" of height.

38.     Under the Federal Food Drug and Cosmetic Act (herein "FDCA"), the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any one representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." United States v. El-O-Pathic Pharmacy, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

39.     Defendants' packaging and advertising of the Products violate various state laws against misbranding. New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*:

> Pursuant to N.Y. AGM. LAW § 201, "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular... 4. If its container is so made, formed, colored or filled as to be misleading."

40.     Defendants' Products are misbranded under New York law because they misled Plaintiffs and Class members about the volume of the Product contained within the container in comparison to the size of the Products' packaging. The size of the container in relation to the actual amount of the Product contained therein gives the false impression that the consumer is buying more than they are actually receiving.

41.     The types of misrepresentations made above would be considered by a reasonable consumer when deciding to purchase the Products. A reasonable person would attach importance

to whether Defendants' Products are "misbranded," *i.e.,* not legally salable, or capable of legal possession, and/or contain non-functional slack-fill.

42.     Plaintiffs did not know, and had no reason to know, that the Products contained non-functional slack fill.

43.     Defendants' Product packaging was a material factor in Plaintiffs' and Class members' decisions to purchase the Products. Based on Defendants' Product packaging, Plaintiffs and Class members believed that they were getting more of the Products than was actually being sold. Had Plaintiff known Defendants' packaging was slack-filled, he would not have bought the slack-filled Products.

44.     Defendants' Product packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendants' misrepresentations are part of its systematic Product packaging practice.

45.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

46.     Defendants' non-functional slack-fill packaging is misleading and in violation of FDA and consumer protection laws of each of the 50 states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States. Plaintiffs and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

47.     As a result of Defendants' misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

48.     Plaintiffs and the Class (defined below) have been damaged by Defendants' deceptive and unfair conduct in that they purchased Products with non-functional slack-fill and paid prices they otherwise would not have paid had Defendant not misrepresented the Products' actual size.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

50.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through the appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendants and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

51.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

52.    Plaintiffs will fairly and adequately protect the interests of the members of the Class in that they have no interests antagonistic to those of the other members of the Class. Plaintiffs have retained experienced and competent counsel.

53.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendants would likely unfairly receive millions of dollars or more in improper charges.

54.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the common questions of law fact to the Class are:

    i.    Whether Defendants labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs, and those similarly situated, using false, misleading and/or deceptive packaging and labeling;

    ii.    Whether Defendants' actions constitute violations of 16 C.F.R. 100, *et. seq.;*

    iii.    Whether Defendants' actions constitute violations of the New York General Business Law § 349;

    iv.    Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of Products;

    v.    Whether Defendants' labeling, packaging, marketing, advertising and/or selling Products constituted an unfair, unlawful or fraudulent practice;

vi.   Whether the packaging of the Products during the relevant statutory period constituted unlawful slack-fill;

vii.  Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future;

viii. Whether the members of the Class have sustained damages as a result of Defendants' wrongful conduct;

ix.   The appropriate measure of damages and/or other relief;

x.    Whether Defendants have been unjustly enriched by their scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations, and;

xi.   Whether Defendants should be enjoined from continuing their unlawful practices.

55.    The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

56.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

57.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

58.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

59.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

60.    Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

## INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

61.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein and further alleges the following:

62.     Plaintiffs bring this claim on behalf of themselves and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, NY GBL § 349.

63.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

64.     Under § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

65.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

66.     The practices employed by Defendants, whereby Defendants advertised, promoted, marketed and sold their Products in packaging resulting in non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349 and 21 C.F.R. 100.100 in that said Products are misbranded. 21. C.F.R. 100.100 provides in part:

> In accordance with section 403(d) of the FDCA, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading. (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-

18

fill is the difference between the actual capacity of a container and the volume of product contained within.

67.    The foregoing deceptive acts and practices were directed at consumers.

68.    Defendants should be enjoined from packaging their Products with non-functional slack-fill as described above pursuant to NY GBL § 349 and 21 C.F.R. 100.100.

69.    Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

70.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

71.    Plaintiffs bring this claim on behalf of themselves and the other members of the Class for violations of NY GBL § 349.

72.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misbranding their Products as seeming to contain more in the packaging than is actually included.

73.    The practices employed by Defendants, whereby Defendants advertised, promoted, marketed and sold their Products in packages with non-functional slack-fill are unfair, deceptive and misleading and are in violation of 21 CFR 100.100 in that said Products are misbranded.

74.    The foregoing deceptive acts and practices were directed at consumers.

19

75.     Plaintiffs and members of the Class suffered a loss as a result of Defendants' deceptive and unfair trade acts.  Specifically, as a result of Defendants' deceptive and unfair acts and practices, Plaintiffs and members of the Class suffered monetary losses associated with the purchase of Products, i.e., receiving only approximately 55% of the capacity of the packaging due to approximately 45% slack-fill.

## COUNT III

### NEGLIGENT MISREPRESENTATION
### (All States and the District of Columbia)

76.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

77.     Defendants, directly or through their agents and employees, made false representations, concealment and nondisclosures to Plaintiffs and members of the Class. Defendants, through their labeling, advertising and marketing of the Products, make uniform representations regarding the Products.

78.     Defendants as the manufacturers, packagers, labelers and initial sellers of the Products purchased by the Plaintiffs had a duty to disclose the true nature of the Products and not sell them with non-functional slack-fill. Defendants had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; Defendants actively concealed material facts from the Plaintiffs and Defendants made partial representations that are misleading because some other material fact has not been disclosed. Defendants' failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions which misled the Plaintiffs who relied on Defendants in this regard to disclose all material facts accurately and truthfully and fully.

79.     Plaintiffs and members of the Class reasonably relied on Defendants' representation that their Products contain more product than actually packaged.

80.     In making the representations of fact to Plaintiffs and members of the Class described herein, Defendants have failed to fulfill their duties to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

81.     Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

82.     Plaintiffs and members of the Class would have acted differently had they not been misled – i.e. they would not have paid money for the Product in the first place.

83.     Defendants have a duty to correct the misinformation they disseminated through their advertising of the Products. By not informing Plaintiffs and members of the Class, Defendants breached their duty. Defendants also profited financially as a result of this breach.

84.     Plaintiffs and members of the Class relied upon these false representations and nondisclosures when purchasing Products, upon which reliance was justified and reasonably foreseeable.

85.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

86.     Defendants acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

87.     Plaintiffs and members of the Class are entitled to punitive damages. Therefore, Plaintiffs pray for relief as set forth below.

### COUNT IV

### COMMON LAW FRAUD
### (All States and the District of Columbia)

88.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

89.     Defendants intentionally made materially false and misleading representations regarding the size, amount and contents of the Products.

90.     Plaintiffs and members of the Class were induced by, and relied on, Defendants' false and misleading packaging, representations and omissions and did not know at the time that they were purchasing the Products that they were only purchasing amounts of product that were much smaller than the sizes of the containers in which the products were packaged.

91.     Defendants knew or should have known of their false and misleading labeling, packaging and misrepresentations and omissions. Defendants nevertheless continued to promote and encourage customers to purchase the Products in a misleading and deceptive manner.

92.     Plaintiffs and members of the Class have been injured as a result of Defendants' fraudulent conduct.

93.     Defendants are liable to Plaintiffs and members of the Class for damages sustained as a result of Defendants' fraud, in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT
### (All States and the District of Columbia)

94.     Plaintiffs reallege and incorporate by reference the above paragraph as if set forth herein.

95.     As a result of Defendants' deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendants were enriched, at the expense of Plaintiffs and members of the Class, through the payment of the purchase price for Defendants' Products.

96.     Plaintiff and members of the Class conferred a benefit on Defendants through purchasing the Products, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefits conferred on it.

97.     Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

98.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact that the volume of the Products purchased by Plaintiffs and members of the Class, was not what Defendants purported it to be by their labeling and packaging. Thus, it would be unjust or inequitable for Defendants to retain the benefit without restitution to Plaintiffs, and all others similarly situated, for 55% of the purchase price of Products, which represents the percentage of the amount of product actually received (45%) to the size of the packaging.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

(A)     For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

(B)     For an Order declaring the Defendants' conduct violates the statutes referenced herein;

(C)     For an Order finding in favor of Plaintiffs and members of the Class;

(D)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E)     For prejudgment interest on all amounts awarded;

(F)     For an Order of restitution and all other forms of equitable monetary relief;

(G)     For injunctive relief to repackage the Products without non-functional slack-fill as pleaded or as the Court may deem proper;

(H)     For an Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

(I)     For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs, on behalf themselves and all others similarly situated, hereby demand a jury trial on all claims so triable.

Dated: September 25, 2014

**Respectfully submitted,**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

BY: C.K. Lee